Louis Pechman
Gianfranco J. Cuadra
Pechman Law Group PLLC
488 Madison Avenue, 11th Floor
New York, New York 10022
Tel.: (212) 583-9500
pechman@pechmanlaw.com
cuadra@pechmanlaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

ANGEL M. CAPOTE, on behalf of himself and all : 
others similarly situated, :
  :
                       Plaintiff, :     **COMPLAINT**
  :
    -against- :
  :
S. KATZMAN PRODUCE INC., d/b/a S. :     **COLLECTIVE ACTION**
KATZMAN PRODUCE, STEPHEN KATZMAN, :
STEFANIE KATZMAN, and MARIO ANDREANI, :
  :
                       Defendants. :
------------------------------------------------------------------ X

        Plaintiff Angel M. Capote ("plaintiff" or "Capote"), on behalf of himself and all

others similarly situated, by his attorneys, Pechman Law Group PLLC, complaining of

defendants S. Katzman Produce, Inc. d/b/a S. Katzman Produce, Stephen Katzman,

Stephanie Katzman, and Mario Andreani (collectively, "defendants"), alleges:

### NATURE OF THE ACTION

        1.     This action is brought to recover unpaid overtime wages pursuant to the

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), and New York Labor Law §

190, *et seq*. ("NYLL"), and statutory damages as a result of defendants' failure to

provide notices pursuant to the Wage Theft Prevention Act ("WTPA"), on behalf of

checkers, porters, loaders, and pickers who worked for defendants.

2.      Throughout most of plaintiff's employment, defendants have failed to pay Capote overtime wages.

3.      From approximately 2009 to January 2014, defendants paid Capote a fixed weekly salary regardless of the number of hours that Capote actually worked.

4.      During this period, on average, Capote regularly worked at least fifty hours per workweek.

5.      Defendants also did not furnish Capote with accurate wage statements listing the number of hours that Capote actually worked and annual wage notices in violation of the WTPA.

6.      Defendants systematically ignored the requirements of the FLSA, NYLL, and WTPA.  Plaintiff, on behalf of himself and all others similarly situated, seeks injunctive and declaratory relief against defendants' unlawful actions, compensation for unpaid overtime wages, liquidated damages, compensatory damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the FLSA, NYLL, and WTPA.

## JURISDICTION

7.      This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over plaintiff's claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

8.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391, because all acts alleged in this Complaint occurred in that district.

## THE PARTIES

**Plaintiff Angel M. Capote**

9.      Angel M. Capote resides in the Bronx, New York.

2

10.     Defendants have employed Capote as a porter, picker, loader, and checker since approximately 2005.

**Defendant S. Katzman Produce, Inc.**

11.     Defendant S. Katzman Produce, Inc. is a New York corporation that owns, operates, and does business as S. Katzman Produce, a warehouse located at Hunts Point Market, Row A, Unit 153-157, Bronx, New York 10474 ("Katzman Produce").

12.     For over eighty years, Katzman Produce has been a leading wholesaler/distributor of quality fruits and vegetables to domestic and international retailers, gourmet outlets, food servicers, caterers, and restaurants.

13.     Katzman Produce has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

14.     Katzman Produce has an annual gross volume of sales in excess of $500,000.

15.     Katzman Produce is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

16.     S. Katzman Produce, Inc. is the corporate entity that appears on plaintiff's paystubs.

17.     All defendants have owned and/or operated Katzman Produce throughout plaintiff's employment.

**Defendant Stephen Katzman**

18.     Throughout plaintiff's employment, defendant Stephen Katzman has been Chief Executive Officer and Principal Executive Officer of Katzman Produce.

19.     Throughout plaintiff's employment, Stephen Katzman has had power and authority over personnel decisions at Katzman Produce, including the power to hire

and fire employees, direct the manner in which employees performed their daily duties and assignments, and establish and implement the pay practices and work and scheduling policies at Katzman Produce.

20.     For example, defendant Stephen Katzman approved plaintiff's pay raises and signed plaintiff's paychecks.

21.     Stephen Katzman exercises sufficient control over Katzman Produce to be considered plaintiff's employer or joint employer under the FLSA and NYLL.

**Defendant Stefanie Katzman**

22.     Throughout plaintiff's employment, Stefanie Katzman has been an owner, operator, and agent of Katzman Produce.

23.     Throughout plaintiff's employment, Stefanie Katzman has had power and authority over personnel decisions at Katzman Produce, including the power to hire and fire employees, direct the manner in which employees performed their daily duties and assignments, and establish and implement the pay practices and work and scheduling policies at Katzman Produce.

24.     For example, defendant Stefanie Katzman approved plaintiff's pay raises and signed plaintiff's paychecks.

25.     Stefanie Katzman exercises sufficient control over Katzman Produce to be considered plaintiff's employer or joint employer under the FLSA and NYLL.

**Defendant Mario Andreani**

26.     Throughout plaintiff's employment, defendant Mario Andreani has been an operator and manager of S. Katzman Produce.

27.     Throughout plaintiff's employment, Andreani has had power and authority over personnel decisions at Katzman Produce, including the power to hire and fire employees, direct the manner in which employees performed their daily duties

4

and assignments, and establish and implement the pay practices and work and scheduling policies at Katzman Produce.

28.     Andreani exercises sufficient control over Katzman Produce to be considered plaintiff's employer or joint employer under the FLSA and NYLL.

## COLLECTIVE ACTION ALLEGATIONS

29.     The claims in this Complaint arising out of the FLSA are brought by plaintiff on behalf of himself and similarly situated persons (*i.e.,* checkers, porters, loaders, and pickers) who are current and former employees of defendants since the date three years prior to the filing of this action who elect to opt-in to this action (the "FLSA Collective").

30.     The FLSA Collective consists of approximately fifty non-exempt employees who have been victims of defendants' common policy and practices that have violated their rights under the FLSA and NYLL by, *inter alia*, willfully denying them overtime pay and other monies.

31.     Defendants have intentionally, willfully, and repeatedly harmed the FLSA Collective by engaging in a business pattern, practice, and/or policy of violating the FLSA and NYLL.  This policy and pattern or practice includes, *inter alia*:

    a.  failing to keep accurate records of hours worked by FLSA Collective members as required by the FLSA and NYLL;

    b.  failing to pay FLSA Collective members overtime pay for all hours worked over forty per workweek; and

    c.  failing to provide accurate wage statements and wage notices to the FLSA Collective.

32.     Defendants have engaged in such unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees their compensation.

33.     Defendants are aware, or should have been aware, that the FLSA and NYLL required them to pay the FLSA Collective members one and one-half times their regular hourly rates for each hour worked in excess of forty per workweek.

34.     Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to the FLSA Collective.

35.     The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to defendants and are readily identifiable and locatable through Katzman Produce's records.  Those similarly situated employees should be notified of and allowed to opt into this action, pursuant to 29 U.S.C. § 216(b).

## PLAINTIFF'S FACTUAL ALLEGATIONS

36.     Throughout his employment, Capote has generally worked as a loader, picker, and porter at Katzman Produce.

37.     As a porter, Capote cleans the warehouse at Katzman Produce.

38.     As a picker, Capote gathers merchandise to be shipped from Katzman Produce to defendants' customers.

39.     As a loader, Capote operates a forklift and machine jack to load Katzman Produce merchandise into trucks for delivery to defendants' customers or for storage.

40.     At times, Capote has also worked as a checker, verifying that the items listed on customer receipts or order sheets are actually loaded into delivery trucks.

41.     From in or about 2008 to January 2014, Capote regularly worked an average of fifty hours per workweek.

42.     During this period, Capote regularly worked Monday through Thursday, 6:00 a.m. to approximately 4:30 p.m., and Friday, 8:00 a.m. to anywhere between 7 p.m. and 1:00 a.m.

43.     During this period, defendants required Capote to work through his lunch breaks.

44.     From approximately 2008 to August 2012, defendants paid plaintiff a fixed weekly salary of $1,100, regardless of the number of hours that he actually worked per workweek.

45.     For example, for the week of July 14 to 20, 2012, defendants paid Capote $1,100 by check, with an accompanying paystub reflecting "40.00" hours worked, even though Capote worked at least fifty-two hours that week.

46.     From approximately August 2012 to January 2014, defendants paid Capote a fixed weekly salary of $1,196.15, regardless of the number of hours that he actually worked per workweek.

47.     For example, for the week of April 13 to April 19, 2013, defendants paid Capote $1,196.15 by check, with an accompanying paystub reflecting "40.00" hours worked, even though Capote worked at least forty-nine hours that week.

48.     Defendants did not provide Capote with annual wage notices in every year between 2009 and 2014, as required by the WTPA.

49.     Defendants did not provide Capote accurate wage statements at the end of every pay period listing, *inter alia*, the number of hours worked per pay period.

## FIRST CLAIM
### (Fair Labor Standards Act – Unpaid Overtime Wages)

50.     Plaintiff and the FLSA Collective repeat and reallege all foregoing paragraphs as if fully set forth herein.

51. Defendants are employers within the meaning of 29 U.S.C. §§ 201, *et seq.*

52. Defendants were required to pay plaintiff and the FLSA Collective one and one-half (1½) times their regular rates of pay for all hours worked in excess of forty hours in a workweek pursuant to the overtime wage provisions of 29 U.S.C. § 207, *et seq.*

53. Defendants failed to pay plaintiff and the FLSA Collective the overtime wages to which they were entitled under the FLSA.

54. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of plaintiff and the FLSA Collective.

55. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay plaintiff's and the FLSA Collective's overtime wages.

56. As a result of defendants' willful violations of the FLSA, plaintiff and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## SECOND CLAIM
### (New York Labor Law – Unpaid Overtime Wages)

57. Plaintiff and the FLSA Collective repeat and reallege all foregoing paragraphs as if fully set forth herein.

58. Defendants are employers within the meaning of the NYLL §§ 190, 651(5), 652, and supporting New York State Department of Labor Regulations, and employed plaintiff and the FLSA Collective.

59. Under the NYLL and supporting New York State Department of Labor Regulations, defendants were required to pay plaintiff and the FLSA Collective one and

one half (1½) times the regular rate of pay for all hours that plaintiff and the FLSA Collective worked in excess of forty per workweek.

60.     Defendants failed to pay plaintiff and the FLSA Collective the overtime wages to which they were entitled under the NYLL.

61.     Defendants willfully violated the NYLL by knowingly and intentionally failing to pay plaintiff and the FLSA Collective overtime wages.

62.     Due to defendants' willful violations of the NYLL, plaintiff and the FLSA Collective are entitled to recover their unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest.

### THIRD CLAIM
### (New York Labor Law – Wage Theft Prevention Act)

63.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

64.     The NYLL and WTPA require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.  From its enactment on April 9, 2011, through 2014, the Wage Theft Prevention Act also required employers to provide an annual written notice of wages to be distributed on or before February 1 of each year of employment.

65.     The NYLL and WTPA also require employers to provide employees with an accurate wage statement each time they are paid.

66.     Throughout plaintiff's employment with defendants, defendants paid plaintiff without providing a wage statement accurately listing:  the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

67.    In violation of NYLL § 191, defendants failed to furnish to plaintiff at the time of hiring, whenever there was a change to plaintiff's rates of pay, and on or before February 1 of each year of employment through 2014, wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

68.    Defendants failed to furnish plaintiff with each payment of wages an accurate statement listing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of the NYLL § 195(3).

69.    Due to defendants' violation of NYLL § 195(1), plaintiff is entitled to recover from defendants liquidated damages of $50 per day that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

70.    Due to defendants' violation of NYLL § 195(3), plaintiff is entitled to recover from defendants liquidated damages of $250 per workweek that the violation

occurred, up to a maximum of $5,000, reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

a.      authorizing the issuance of notice at the earliest possible time to all of Katzman Produce's similarly situated employees who were employed by defendants during the three years immediately preceding the filing of this action.  This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit;

b.      declaring that defendants have violated the overtime provisions of the FLSA and the NYLL;

c.      declaring that defendants' violations of the FLSA and NYLL were willful;

d.      declaring that defendants violated the notice provisions of the WTPA;

e.      awarding plaintiff and the FLSA Collective damages for unpaid overtime wages;

f.      awarding plaintiff and the FLSA Collective liquidated damages in an amount equal to twice the total amount of the wages found to be due, pursuant to the FLSA and NYLL;

g.      awarding plaintiff statutory damages arising out of defendants' failure to provide accurate wage statements and annual wage notices;

h.      awarding plaintiffs reasonable attorneys' fees, costs, and interest pursuant to the FLSA and the NYLL; and

i.    awarding such other and further relief as the Court deems just and

proper.

Dated:  New York, New York
        December 9, 2015

PECHMAN LAW GROUP PLLC

By: _____
    Louis Pechman
    Gianfranco J. Cuadra
    488 Madison Avenue, 11th Floor
    New York, New York 10022
    Tel.:  (212) 583-9500
    pechman@pechmanlaw.com
    cuadra@pechmanlaw.com
    *Attorneys for Plaintiff*