**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANGEL M. CAPOTE, on behalf of himself and all others similarly situated <br><br> Plaintiff, <br><br> v. <br><br> S. KATZMAN PRODUCE, INC., d/b/a S. KATZMAN PRODUCE, STEPHEN KATZMAN, STEFANIE KATZMAN, and MARIO ANDREANI <br><br> Defendants. | 15 Civ. 9632 (AT) (JCF) |

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AND DISMISSAL OF ALL CLAIMS WITH PREJUDICE

### I.    INTRODUCTION

By this Joint Motion, Plaintiff Angel M. Capote ("Capote") and Defendants S. Katzman

Produce, Inc. ("Katzman Produce"), Stephen Katzman ("Stephen"), Stefanie Katzman

("Stefanie"), and Mario Andreani ("Andreani"), (collectively, "Defendants"), (together, with

Plaintiff, the "Parties"), hereby seek Court approval of the settlement they have reached in this

matter, as reflected in the Settlement Agreement and General Release attached hereto as Exhibit

1, entry of the Stipulation and Order of Dismissal with Prejudice, Exhibit A to the Agreement,

onto the record, and dismissal with prejudice of the above-referenced matter.

### II.    FACTUAL AND PROCEDURAL BACKGROUND

On December 9, 2015, Plaintiff Capote filed this action against Defendants.  (Docket No.

1.)  In the Complaint, Plaintiff brought claims under the Fair Labor Standards Act ("FLSA"), the

New York Labor Laws ("NYLL"), and the Wage Theft Prevention Act ("WTPA"), alleging that

he was misclassified as exempt from the FLSA and NYLL and thus was entitled to recover

unpaid overtime wages and related damages.  On December 30, 2015, Defendants filed their

Answer, in which they denied any liability in this matter.  (Docket No. 6.)

On February 12, 2016, the Parties filed their agreed-upon Joint Letter pursuant to Your

Honor's December 16, 2015 Order.  (Docket No. 7.)  On February 17, 2016, the Parties attended

a Case Management Conference before Your Honor.  (Docket No. 8.)

The Parties engaged in settlement discussions even before the filing of this matter, since

August 2015, that continued up until February 17, 2016.  After many rounds of negotiations and

detailed exchange of information and documents, including Plaintiff's time and pay records, the

Parties agreed to a settlement amount and drafted the Settlement Agreement and General Release.

The Parties subsequently entered into the Settlement Agreement and General Release

memorializing the terms of the settlement, which the Parties fully executed as of March 17, 2016.

As part of the Settlement Agreement and General Release, Plaintiff agrees to dismiss with

prejudice all claims asserted in the Complaint.  Per Your Honor's Order on February 17, 2016,

the Parties now submit a Joint Motion requesting the Court approve the Settlement Agreement

and General Release so that the case can be dismissed with prejudice.  (Docket No. 9.).

## III.   THIS COURT SHOULD APPROVE THE SETTLEMENT OF PLAINTIFF'S FLSA CLAIMS AS FAIR AND REASONABLE AND DISMISS THE ACTION WITH PREJUDICE

The Second Circuit's recent decision in *Cheeks v. Freeport Pancake House, Inc.*, 796

F.3d 199 (2d Cir. 2015), provides that stipulated dismissals settling FLSA claims with prejudice

require the approval of the district court or the Department of Labor.  796 F.3d at 200.

"Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate

indicator of the fairness of the settlement.  If the proposed settlement reflects a reasonable

compromise over contested issues, the court should approve the settlement." *Martinez v. Hilton*

2

*Hotels Corp.*, No. 10 Civ. 7688 (JLC), 2013 WL 4427917, at *2 (S.D.N.Y. Aug. 20, 2013)

(quoting *Garcia v. Bae Cleaners Inc.*, No. 10 Civ. 7804 (KBF), 2012 WL 1267844, at *1

(S.D.N.Y. Apr. 12, 2012)).  In this jurisdiction, courts consider the totality of the circumstances

when determining whether a proposed settlement is fair and reasonable, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to
> which "the settlement will enable the parties to avoid anticipated
> burdens and expenses in establishing their respective claims and
> defenses"; (3) the seriousness of the litigation risks faced by the
> parties; (4) whether "the settlement agreement is the product of
> arm's-length bargaining between experienced counsel"; and (5) the
> possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).  The Parties believe the

settlement reached here is fair and reasonable under these factors.

### A.    Plaintiff's Range of Recovery and Litigation Risk

Although Plaintiff alleges that he is entitled to a greater recovery, the settlement amount

is reasonable in light of the serious litigation risks faced by Plaintiff as to both liability and

damages.  Based on the allegations in the Complaint, Plaintiff claims that he is owed unpaid

wages based on Defendants' alleged misclassification of Capote as exempt for a period of

approximately five years.  Defendants, however, are disputing liability in this action, and assert

that they were not required to pay Plaintiff Capote unpaid wages because he was exempt from

the FLSA and NYLL under the executive exemption.  Thus, Plaintiff faces the risk of recovering

nothing at all should the Court accept Defendants' position.

Plaintiff also faces the serious risk that even if he were to win on all counts at trial, his

damages would be calculated using Defendants' proposed methodology, the fluctuating

workweek or "half-time" methodology.  Plaintiff calculates that he is owed a total of

approximately $185,000, including all allegedly unpaid overtime wages, double liquidated

damages, CPLR interest, and statutory damages under the Wage Theft Prevention Act.  Of this

amount, $74,000 represents unpaid overtime wages. Defendants respond that the fluctuating workweek methodology applies to this case and that, under this methodology, Plaintiff's greatest possible recovery would be approximately $51,000. Defendants further contend that liquidated damages of any kind are not appropriate at all, and even if liquidated damages were available, Plaintiff cannot recover them under both the FLSA and NYLL simultaneously.

In light of the risks of findings in favor of Defendants on both liability and damages, and especially because the settlement amount of $70,000 equals almost the entire amount of unpaid overtime due to him under the regular 40-hour workweek methodology and is more than Plaintiff's full recovery under the fluctuating workweek methodology, the settlement amount is reasonable.

### B.      Avoidance of Litigation Burdens and Expenses

A significant factor in settlement negotiations was the avoidance of litigation burdens and expenses. If the case were to continue, both parties would take written discovery and depositions. Plaintiff also would file a motion for conditional certification under the FLSA, and Defendants would oppose the motion. If Plaintiff's motion prevailed, Defendants would also take discovery of any opt-in plaintiffs and would ultimately move for decertification of the FLSA collective. Defendants or Plaintiff may file summary judgment motions. If no summary judgment motions were successful, the case would be tried on either an individual or collective basis. Thus, further litigation will result in both sides incurring significant legal fees that would very likely exceed the damages at stake and certainly exhaust the resources used to settle this matter.

### C.      Arms' Length Negotiations, Absence of Collusion

Both sides were represented by experienced and competent counsel that engaged in extensive fact discovery and arms' length and vigorous negotiations both before and after the filing of the Complaint. The negotiations required a significant expenditure of time and effort,

including the negotiation, drafting, and execution of a tolling agreement, the exchange of damage calculation spreadsheets, the review of payroll and time records, and various rounds of offers and counteroffers from both sides. Defendants produced, and Plaintiff analyzed, relevant pay and time records before the initial conference in this matter.

In preparing damages calculations, Plaintiff's counsel collected and analyzed all of Plaintiff's paystubs since the beginning of 2012, analyzed Defendants' time records dating back to 2011, and reviewed all damages calculations with Plaintiff before submitting and discussing them with defense counsel. Plaintiff's counsel requested that Defendants stipulate to conditional certification, and after Defendants did not agree to do so, Plaintiff's counsel began to research and draft a motion for conditional certification in preparation for the initial conference before this Court. Throughout all of this, the parties continued to negotiate a possible settlement.

The Parties' vigorous negotiations and amount of work performed in this matter confirm that there was no collusion or fraud and that the settlement amount is the product of fair and reasonable negotiations.

### D.    Attorneys' Fees

Finally, Plaintiff's attorneys' fees do not present any barrier to approval. Pursuant to the contingency fee retainer agreement between Plaintiff and counsel, Plaintiff's attorneys' fees and costs total $23,640.50, which equals 33.3% of the Settlement Payment, plus reimbursements of costs incurred in the prosecution of this matter. *See In re Lawrence*, 24 N.Y.3d 320, 339 (2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written."). As Judge Pitman has explained, *Cheeks* does not require the Court to review a plaintiff's fee arrangement with counsel:

> I do not address the fee arrangement between plaintiff and his counsel because I do not believe I am required to do so under *Cheeks* . . . . As described in *Cheeks*, the purpose of the FLSA is

> to regulate the relationship between an employee and his employer
> and to protect the employee from over-reaching by the employer. I
> do not understand the FLSA to regulate the relationship between
> the employee as plaintiff and his counsel or to alter the freedom of
> contract between a client and his attorney.

*Villalva-Zeferino v. Park*, No. 15 Civ. 6932 (HBP), 2016 U.S. Dist. LEXIS 19125, at *4 n. 2

(S.D.N.Y. Feb. 17, 2016); *see also Gutierrez v. 352 E. 86th St. Rest. Inc. d/b/a "Gracie's Corner*

*Diner" et al.*, No. 15 Civ. 2064, at *3-4 n. 1 (S.D.N.Y. Feb. 19, 2016) (same).

In any event, Plaintiff's attorneys' fees and costs are reasonable in light of the amount of

time dedicated to this matter, as discussed above. Plaintiff's counsel's lodestar currently exceeds

$31,000.00. As such, the Parties believe that the contingency fee in this case is fair and

reasonable, particularly because it is less than the lodestar and it is limited to approximately 33%

of the settlement amount. *See, e.g., Ahmed v. Landry's, Inc.*, No. 15 Civ. 2186 (AT) (S.D.N.Y.

Nov. 23, 2015) (ECF No. 43) (comparing proposed attorneys' fee equal to one-third of

settlement amount, plus reasonable costs and expenses, to attorneys' lodestar and approving it as

"fair and reasonable").

**CONCLUSION**

For all the foregoing reasons, the Parties respectfully request that their Joint Motion for

Approval of Settlement and Dismissal of All Claims be granted and that the Court dismiss the

case with prejudice through entry of the Stipulation and Order of Dismissal with Prejudice

submitted herewith.

Dated: March 18, 2016

Louis Pechman, Esq.
Pechman Law Group PLLC
488 Madison Avenue, 11th Floor
New York, New York 10022
Tel: (212) 583-9500
Fax: (212) 308-8582
pechman@pechmanlaw.com

*Attorneys for Plaintiff*

Kristina A. Yost
JONES DAY
222 East 41st Street
New York, New York 10017
Tel: (212) 326-3939
Fax: (212) 755-7306
kyost@jonesday.com

*Attorneys for Defendants*